Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000413
23-OCT-2018
08:51 AM

NO. CAAP-17-0000413

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

KU, Plaintiff-Appellant, v.
CS, Defendant-Appellee

IN THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 13-1-1737)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Chan, JJ.)

Plaintiff-Appellant KU (**KU**) appeals from the March 7, 2017 Amended Order Re: Defendant's Motion and Declaration for Post-Decree Relief Filed May 2, 2016 and Plaintiff's Motion and Declaration for Post-Decree Relief Filed June 22, 2016 (**Amended Order**), and the April 13, 2017 Order Denying Plaintiffs Motion for Reconsideration of [Amended Order] (**Order Denying Motion for Reconsideration**), both entered against him and in favor of Defendant-Appellee CS (**CS**) in the Family Court of the First Circuit (**Family Court**).[1]

---

[1]     The Honorable William J. Nagle, III, presided.

KU raises six points of error on appeal:

(1) KU challenges Findings of Fact (**FOFs**) 5, 7-9, 11, 12, 14, 15, 23-31, 33-36, 38-44, 46-51, 53-59, and 62-69, and Conclusions of Law (**COLs**) 3, 6, 7, 8, 11-15, 17-20, 22, 23, and 26,[2] contending that the Family Court abused its discretion when it raised the issue of legal custody *sua sponte* and awarded sole legal custody to CS;

(2) KU challenges FOFs 12 and 13, and COLs 26 and 27, contending that the Family Court abused its discretion when it awarded attorneys' fees to CS;

(3) KU challenges FOFs 9-11, 15, 33, 34, 36, 46, 53, 54, 56, and 69, and COLs 6-8, and 22, contending that the Family Court abused its discretion when it ordered Robert Simon, Ph.D. (**Dr. Simon**), to remain as the Custody Evaluator, despite Dr. Simon having lost his interview notes from two days of interviews conducted with KU and the parties' children;

(4) KU challenges FOFs 3-5, 7, 14, 31, 34, 49, 57, and 58, and COLs 8 and 15, contending that the Family Court abused its discretion when it failed to exclude privileged, irrelevant, and inadmissible testimony by the parenting coordinator, Rhesa Kaulia, MFT (**Kaulia**);

(5) KU challenges FOFs 7, 12, 13, 26, 27, 28, 30, 38, 39, 40, 41, 42, 44, 57, 58, 64, 65, 66, and 68, and COLs 14, 15, 26, and 27, contending that the Family Court exhibited bias against KU; and

---

[2] The Family Court's FOFs and COLs were entered on August 31, 2017.

(6) KU challenges FOF 15 and COL 19, contending that the Family court abused its discretion when it denied KU's Motion for Reconsideration.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, as well as the relevant statutory and case law, we resolve KU's contentions as follows:

(1) KU contends that the Family Court erred in raising the issue of legal custody *sua sponte* and in granting sole legal custody of the children to CS because: (1) legal custody was not an issue set for trial; and (2) it was in the best interests of the children for CS and KU to have joint legal custody.

Hawaii Revised Statutes (**HRS**) § 571-46 (Supp. 2017) provides, in relevant part:

> (a) In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. . . .
>
> . . . .
>
> (6) Any custody award shall be subject to modification or change <u>whenever</u> the best interests of the child require or justify the modification or change . . . .

(Emphasis added).

HRS § 571-46.1(c) (2006) provides that "[a]ny order for joint custody may be modified or terminated upon the petition of one or both parents or <u>on the court's own motion</u> if it is shown that the best interests of the child require modification or termination of the order." (Emphasis added).

Here, according to the Family Court's Pretrial Order No. 1, the issue of legal custody was marked as "Agreed," meaning that it was not in dispute at that time. However, the Family Court raised the issue *sua sponte* at the end of trial. Thus, whether or not the Family Court properly exercised its authority and discretion to "terminate" joint legal custody "on its own motion," depends on whether or not such action was required by the best interests of the parties' children. See HRS § 571-46.1(c).

There is substantial evidence in the record supporting the Family Court's determination that it was in the best interests of the children to award sole legal custody to the parent with primary physical custody. As the Family Court noted, the parties were not able to "discuss issues concerning the children productively and cooperatively, with consensus decisions within reasonable timeframes, resulting in uncertainty, delay and upset for the children." Dr. Simon reported that during a recorded encounter, the parties verbally denigrated each other with their two younger children in the vicinity, but Dr. Simon could not determine if the parties were within earshot of the children when the inappropriate comments were made. Dr. Simon also reported that "[the parties'] ability to communicate and discuss matters in a neutral, let alone collegial manner, is essentially absent." At trial, Dr. Simon testified that it was his belief that KU was "raging or angry" at CS and that CS was also angry at KU. However, Dr. Simon also cautioned that "[CS] needs to work on her provocativeness, her inclusiveness and the

promotion of the children's relationship with [KU]." Dr. Simon also testified that KU's relationship with the parties' oldest child was severely broken, that it would be risky and inappropriate to separate the siblings, and that KU was rigid and uncooperative.

Kaulia, the court-appointed Parenting Coordinator, testified regarding KU's lack of cooperation and hostility toward her on multiple occasions, including that the mail she sent to him was repeatedly rejected, even when sent to the confirmed correct address. Kaulia reported that when she asked both parties to begin using an online communication platform by April 27, 2016, KU registered for it over one month after the deadline. Kaulia stated that KU repeatedly challenged her authority throughout the parenting coordination process, that he was not polite to her, that he made comments that what Kaulia had to say was "utterly irrelevant" and that he was not bound by her decisions. Kaulia further testified that when CS and KU came to an agreement regarding the children, KU generally did not abide by the agreement.

CS also testified as to the high level of conflict between her and KU. CS testified that KU had contacted her employer with a false story about a pregnant girlfriend being a patient at CS's place of employment, "with the intention of being damaging," and had done something similar to the man she was dating. CS testified that she was afraid to tell KU that she was submitting applications for the children to attend schools in another state on the grounds that he might try to contact the

schools and sabotage the children's chances of attending those schools. She testified that she later learned that KU had in fact contacted one of the schools. KU himself admitted contacting one of the schools upon finding out, and he testified that he was "absolutely not" consenting to the children's attendance at those schools.

We conclude that the Family Court did not err in addressing and terminating joint legal custody on its own motion, and then awarding sole legal custody to CS. See HRS § 571-46.1(c); HRS § 571-46(a)(6). We further conclude that the related FOFs and COLs are not clearly erroneous or wrong, and the Family Court did not abuse its discretion in granting sole legal custody to CS, the parent with primary physical custody. See In re Jane Doe, 101 Hawai'i 220, 227, 65 P.3d 167, 174 (2003).

(2) KU contends that the Family Court abused its discretion in awarding $3,651.21 in attorneys' fees and costs to CS, claiming that the award was a sanction against him for "running afoul" of the Family Court's schedule.

HRS § 580-47(f) (Supp. 2017) provides:

> (f) Attorney's fees and costs. The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties . . . may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.

Here, CS submitted a request for $73,117.11 in attorneys' fees and costs. She stated that the fees included amounts for litigating the Post-Decree Motions, attending several court hearings, preparing exhibits and witnesses for trial, and writing closing arguments. The Family Court awarded only a fraction of the requested sum. The Family Court's Order Regarding Attorneys' Fees and Costs did not state the court's reasoning. However, it appears from the record that the Family Court considered "the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, and the burdens imposed upon either party for the benefit of the children[.]" HRS § 580-47(f). We find no evidence to support KU's argument that the attorneys' fees were an improper "sanction" for his extensive cross-examination of CS's witnesses.

Thus, we conclude that the Family Court did not abuse its discretion in ordering KU to contribute to CS's attorneys' fees and costs in the amount of $3,651.21, and that the related FOFs and COLs are not clearly erroneous or wrong.

(3) KU contends that the Family Court erred by granting CS's Motion to Retain Appointment of Dr. Simon even though Dr. Simon lost his notes from his interview with KU.[3] CS

---

[3] KU also appears to argue vaguely that the Family Court should have excluded Dr. Simon's report and testimony because Dr. Simon allegedly did not contact many of KU's collateral contacts and because Dr. Simon was biased against KU. However, KU did not move the Family Court to exclude Dr. Simon's report or testimony based on these allegations, and these arguments are waived. See Asato v. Procurement Policy Bd., 132 Hawai'i 333, 354 n.22, 322 P.3d 228, 249 n.22 (2014) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]" (citation omitted)).

argues that KU was not prejudiced by Dr. Simon losing his notes because Dr. Simon re-interviewed KU.

> HRS § 571-46(a)(4) provides in relevant part:
>
> Whenever good cause appears therefor, the court <u>may</u> require an investigation and report concerning the care, welfare, and custody of any minor child of the parties. When so directed by the court, investigators or professional personnel attached to or assisting the court, hereinafter referred to as child custody evaluators, shall make investigations and reports that shall be made available to all interested parties and counsel before hearing.

(Emphasis added).

Here, Dr. Simon had already completed his interviews with the family members and was about to fly home to California, when he realized that he was missing the notes from his interviews with KU. He stated that his memory was sufficient to complete his report without his notes, but offered to step down and refund all monies paid to him. KU requested that Dr. Simon step down. At the hearing on the matter, Dr. Simon stated that the only tasks he had left were to interview the parties' collateral contacts and to re-review his notes to see if he had any remaining unanswered questions for the parties, to have any such questions answered quickly, and to write his report. The Family Court stated that it viewed the loss of Dr. Simon's notes as a credibility issue and not something that would merit terminating Dr. Simon's appointment. When granting the Motion to Retain Appointment of Dr. Simon, the Family Court ordered Dr. Simon to re-interview KU, and Dr. Simon did.

Although KU asked the Family Court to proceed to trial without a custody evaluation, the Family Court had the discretion to require a custody evaluation, and had the discretion to direct

Dr. Simon to perform the evaluation. See HRS § 571-46(a)(4); Tri-S Corp. v. W. World Ins. Co., 110 Hawaiʻi 473, 489, 135 P.3d 82, 98 (2006) (holding that the word "may" implies discretion).

The Family Court's actions were reasonable, and we conclude that the Family Court did not abuse its discretion in retaining the appointment of Dr. Simon as the Custody Evaluator, and that the related FOFs and COLs are not clearly erroneous or wrong.

(4) KU contends that the Family Court erred in: (1) denying his Motion in Limine and allowing Kaulia to testify although legal custody was not supposed to be at issue at trial; (2) allowing Kaulia to testify as to matters that fell within attorney-client privilege; and (3) allowing Kaulia to testify as to matters that were inadmissible under Hawaii Rules of Evidence (HRE) Rule 408 because they were part of compromise negotiations. CS submits that: (1) Kaulia's testimony was relevant to the issues at trial; and (2) KU does not point to any specific statements by Kaulia that were either privileged or inadmissible under HRE Rule 408.

In his Motion in Limine, KU sought an order that "excludes the testimony at trial of . . . RHESA R. KAULIA, MC/MFT, Parent Coordinator, as modification of joint legal custody has not been raised by either party[.]" The Family Court denied the motion, stating: "Ms. Kaulia's efforts to mediate between the parties can be raised by objection at the time of her testimony. And so as far as striking the entirety of her testimony as a witness, the Court is disinclined to do that[.]"

The issues set for trial included, *inter alia*, physical custody, relocation, and visitation. In her memorandum in opposition, CS argued that the parties' cooperation or lack thereof was relevant to the issue of relocation. At the hearing on the Motion in Limine, CS argued that Kaulia was a "percipient witness" who had worked with the parties. As the Family Court decided not to preclude all testimony from Kaulia, but instead to allow KU to object if Kaulia testified as to allegedly inadmissible matters, it appears that the court determined that Kaulia might have had relevant testimony as to physical custody, relocation, or visitation.

On this record, we cannot conclude that the Family Court abused its discretion in denying the Motion in Limine to exclude all testimony from Kaulia. <u>State v. Kealoha</u>, 95 Hawaiʻi 365, 379, 22 P.3d 1012, 1026 (App. 2000).

KU's second and third arguments, that the trial court allowed Kaulia to testify to matters that were privileged under attorney-client privilege or inadmissible under HRE Rule 408, are waived.

Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) states in relevant part that an appellant's opening brief must contain:

> (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (I) the alleged error committed by the court or agency; (ii) <u>where in the record the alleged error occurred;</u> and (iii) <u>where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.</u> Where applicable, each point shall also include the following:
> (A) <u>when the point involves the admission or rejection of evidence, a quotation of the grounds urged for the objection and the full substance of the evidence admitted or rejected.</u>

(Emphasis added). It further states that "[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented. Lengthy parts of the transcripts that are material to the points presented may be included in the appendix instead of being quoted in the point." Id.

In Kaho'ohanohano v. Dep't of Human Servs., State of Haw., 117 Hawai'i 262, 297 n.37, 178 P.3d 538, 573 n.37 (2008), Appellant Department of Human Services (DHS) did not list which of the 249 FOFs it was challenging, but stated generally that "'to the extent that the [trial] court's application of the facts to the law raises mixed questions of fact and law, the court's findings are clearly erroneous.'" Id. The supreme court held that DHS had made no discernible argument and therefore waived any dispute as to the trial court's findings. Id.

Here, KU does not identify any specific testimony by Kaulia that revealed privileged information or that was inadmissible under HRE Rule 408. He merely refers this court to 130 pages of testimony, much of which was his own cross-examination of Kaulia. Because KU has not identified any specific testimony that was erroneously admitted, he has waived his argument. See HRAP Rule 28(b)(4)(D). Furthermore, in failing to identify any specific erroneously admitted testimony, KU has failed to present any discernible argument. Cf. Kaho'ohanohano, 117 Hawai'i at 297 n.37, 178 P.3d at 573 n.37.[4]

---

[4] Upon review of the transcript of the proceedings, we find no instance in which KU objected to specific testimony by Kaulia on the grounds
(continued...)

Accordingly, we reject this point of error.

(5) KU argues that the Family Court exhibited bias against him when the judge: (1) failed to disclose on the record that KU was an attorney who had previously appeared before the Family Court in other cases; (2) struck KU's Motion to Strike Amended Order; (3) tardily filed the FOFs and COLs; (4) denigrated KU for his lack of monetary resources and ruled in favor of CS due to her greater financial resources; and (5) misstated in FOF 11 that Dr. Simon opined that the best interests of the children would be best served by awarding legal custody of the children to CS.[5]

Somewhat similarly, in Aga v. Hundahl, the appellants contended that the trial court was biased against them because it:

---

[4](...continued)
of attorney-client privilege. Attorney-client privilege was brought up once, but not directly related to Kaulia's testimony. When CS questioned Kaulia about a meeting that Kaulia had with KU and his counsel, KU's counsel objected on the grounds that she (counsel) might personally have to be called as a rebuttal witness, and in doing so, she herself might be asked to reveal privileged information. This concern never materialized, and KU's counsel was not called as a witness.

Moreover, according to the Stipulated Order Appointing Parenting Coordinator, the parties stipulated that "[c]ommunications between the parties (and their agents) and the parenting coordinator are not confidential." Therefore, those communications are not protected under Attorney-Client privilege. See HRE Rule 503(b) ("[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications").

It appears that KU did object (once) at trial to Kaulia's testimony on HRE Rule 408 grounds. However, Kaulia's testimony did not appear to violate HRE Rule 408. Her testimony as to some of the agreements regarding permissible changes in time sharing were not admitted to prove liability or lack thereof for the matters being agreed to. See HRE Rule 408. The Family Court admitted the testimony for the purpose of showing whether KU adhered to the agreements he made.

[5] We agree that Dr. Simon recommended joint legal custody, and therefore FOF 11 is, in part, clearly erroneous. However, KU's argument here is that this is evidence of bias. KU does not rely on Dr. Simon's recommendation in arguing that the Family Court erred in awarding CS full legal custody.

> (1) precluded them from conducting adequate
> cross-examination; (2) refused to treat the parties' expert
> witnesses evenhandedly when he excluded Appellants' expert
> from the courtroom during bench conferences, but allowed
> Appellee's witness to remain; (3) admitted Appellee's
> unmarked and undisclosed exhibits into evidence; (4) refused
> to compel Appellee to produce documents in his possession
> that he allegedly purposely withheld in pre-trial discovery;
> and (5) made inconsistent rulings favoring Appellee.

78 Hawai'i 230, 242, 891 P.2d 1022, 1034 (1995). However, the

supreme court stated:

> we have long adhered to the general rule that, standing
> alone, "_mere erroneous_ or adverse rulings by the trial judge
> do not spell bias or prejudice[.]" Appellants offer no
> proof of the trial judge's alleged bias against them other
> than the circumstantial evidence of the court's adverse
> rulings. Such evidence, without more, is insufficient to
> support a claim of judicial bias.

Id. (internal citation omitted).

KU's argument that Judge Nagle should be disqualified

because he failed to disclose on the record that KU had appeared

as an attorney at family court, in other cases, is meritless. KU

does not specifically allege that he has appeared before Judge

Nagle in other cases. Nor does he allege that Judge Nagle had

any other sort of conflict in presiding over the trial. It

appears that KU is arguing that because Judge Nagle did not

affirmatively state that KU's past representation of clients

before the family courts would not create a conflict or affect

Judge Nagle's rulings, as some other family court judges have

stated, that Judge Nagle's "nondisclosure" is evidence of bias

against KU. KU provides no authority for this assertion, and we

find none.

KU's other allegations are simply that the Family Court

entered its FOFs and COLs late and made adverse or erroneous

rulings. KU's allegations are insufficient to support a claim of judicial bias.

Accordingly, we conclude that this point of error has no merit.

(6) In denying KU's Motion for Reconsideration, the Family Court stated, in part, that "[t]he [Motion for Reconsideration] contains no new evidence from which the Court may reconsider its ruling on the merits. While [KU] attached his Declaration to the instant Motion, the Declaration simply refers to discussion in the body of the instant Motion, without any attached documents, testimony or other evidence."

KU argues that he "provided the Trial Court with information about Defendant's conduct since the filing of the Minute Order[.]"[6] CS argues that KU was merely trying to relitigate old matters.

"If a motion requires the consideration of facts not appearing of record, it shall be supported by affidavit or declaration." Hawaiʻi Family Court Rules (HFCR) Rule 10(a). Such an affidavit or declaration is necessary to establish a factual basis for the motion. See State v. Tierney, No. 29993, 2010 WL 5407351, at *2 (Haw. App. Dec. 29, 2010) (SDO) ("Having presented no affidavit or declaration, and unable as a result to establish the factual basis for any of his claims, Tierney is

---

[6] In his Motion for Reconsideration, KU also included a request for a new trial. In his opening brief, KU mentions that the Family Court erred in concluding that KU "failed to show good cause for a new trial." However, KU advances no discernible argument regarding the Family Court's denial of his request for a new trial, and therefore any such argument is waived. See Kakinami v. Kakinami, 127 Hawaiʻi 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citation omitted).

unable to make a *prima facie* case showing that he is entitled to dismissal."). "In lieu of an affidavit, an unsworn declaration may be made by a person, in writing, subscribed as true under penalty of law, and dated[.]" HFCR Rule 10(b).

Here, KU stated in his declaration: "I have personal knowledge of the statements made herein and I am competent to testify regarding said statements, except where such statements are made upon information and/or belief; as to those statements, I believe them to be true." However, he did not submit any new evidence contained in or attached to his declaration. See Taqupa v. Taqupa, 108 Hawai'i 459, 465, 121 P.3d 924, 930 (App. 2005). Neither did he subscribe his declaration as "true under penalty of law." See HFCR Rule 10(b). Thus, we conclude that the Family Court did not abuse its discretion in denying KU's Motion for Reconsideration.

Even assuming, *arguendo*, that KU's declaration was an attempt to attest to the factual assertions contained in his memorandum in support of reconsideration, those factual allegations concerned CS's post-ruling conduct and the post-ruling circumstances of the children that purportedly arose following the children's move out-of-state and KU's loss of joint legal custody. We conclude that such factual allegations would not necessarily warrant reconsideration of the Family Court's ruling on CS's post-decree motion. We note, however, that any custody award, including the award of both legal and physical custody to CS as set forth in the Amended Order, remains subject to modification or change "whenever the best interests of the

child require or justify the modification or change[.]" See HRS § 571-46(b). Our conclusion that the Family Court did not abuse its discretion in denying reconsideration should not be construed as a bar to a further modification or change of custody, if the best interests of the parties' children required a further modification or change.

To the extent that FOF 11 states that Dr. Simon opined that the best interests of the children would be best served by awarding legal custody to CS, it is clearly erroneous and is hereby stricken. See supra note 5. In all other respects, the Family Court's June 22, 2016 Amended Order and April 13, 2017 Order Denying Motion for Reconsideration are affirmed.

DATED: Honolulu, Hawai'i, October 23, 2018.

On the briefs:

Klemen Urbanc,
Plaintiff-Appellant, Pro Se.

Paul A. Tomar,
Lynne Jenkins McGivern,
Gemma-Rose Poland Soon,
(Ashford & Wriston, LLLP),
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge